# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1949-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

THOMAS PUMPHREY,

    Defendant-Appellant.

_____

Submitted April 24, 2024 – Decided May 9, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 13-09-0544 and 14-09-0614.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, of counsel and on the brief).

John P. McDonald, Somerset County Prosecutor, attorney for respondent (Lorina C. Murphy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Thomas Pumphrey appeals from an order dismissing his post-conviction relief (PCR) petition without an evidentiary hearing. Defendant argues the court erred by finding he had failed to sustain his burden of establishing a prima facie ineffective-assistance-of-trial-counsel claim under the standard established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted under our State Constitution in State v. Fritz, 105 N.J. 42, 58 (1987). Unpersuaded by defendant's arguments, we affirm.

I.

Somerset County grand juries charged defendant in two indictments. The first charged defendant with second-degree attempted sexual assault, N.J.S.A. 2C:14-2(c)(4) and N.J.S.A. 2C:5-1; third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4; and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b). The second indictment charged defendant with third-degree stalking, N.J.S.A. 2C:12-10, and fourth-degree contempt, N.J.S.A. 2C:29-9.

The charges arose out of defendant's communications through social media sites with a juvenile, Doris.[1] The communications took place while

---

[1] We use a pseudonym to refer to the victim to protect the child's privacy and because the identity of victims of sexual offenses are excluded from public access under Rule 1:38-3(c)(9) and (c)(12).

defendant was in Mississippi, where he resided, and Doris was in New Jersey, where she resided.

The charges in the indictments were tried together before a jury. The evidence presented at trial established that defendant was fifty-six years old in February 2013, when he began communicating with fourteen-year-old Doris over social media. Doris advised defendant of her age that time. Defendant had pretended to be a nineteen-year-old bodybuilder when speaking with her.

After approximately one month, defendant sent Doris a photo of his penis. He later claimed he had sent the photo by accident. "[H]orrified," Doris told him, "just don't do it again." Within "a week or two[,]" defendant had sent another photo of his penis, as well as a video of him masturbating. Defendant told Doris that he had been "raped when he was younger" and he needed to send the video to her for him to "be happy." Doris testified she felt confused and uncomfortable by her receipt of those messages. Defendant sent similar photos and videos with greater frequency until around May 2013, when Doris told him she did not want to talk to him anymore and she blocked him on all social media sites.

Undeterred by Doris's rebuff, defendant used fake social media accounts to communicate with Doris's friends. In some of those communications

3

defendant asked that Doris's friends say hello to her for him or he included screenshots of conversations between Doris and himself. Doris testified she "started freaking out" when her friends showed her those communications and she instructed her friends to block defendant on their social media accounts.

On May 29, 2013, Doris instructed defendant to stop contacting her. Doris repeatedly told him "I want you to please leave me alone," "you need to leave me alone. I'm serious," and "please leave me and my life alone." Defendant responded by stating Doris had promised "not to leave [him] hanging" and lamented that he was "tired of being used by girls and [he's] ready to blow it all up." Doris told defendant she could not help him, and he needed to leave her alone.

Defendant's communications continued and, because she was afraid of him, Doris agreed to communicate with him once each week to placate him and dissuade him from continuing his contact with her friends. However, defendant became upset when he felt Doris did not respond to him quickly enough and his communications became more aggressive. He threatened Doris, stating "[y]ou just wait. . . . Enjoy [twenty] different accounts with all kind of info and Internet chat room. . . . You have done this not me. . . . Damn I'm so mad I want to explode . . . and fly up there." Doris testified she was "terrified" by that

A-1949-22

message. Doris also explained she had stopped going out with friends, "was always sad," and "couldn't sleep at night" because of defendant's communications.

Defendant had sent Doris numerous photos of his penis and videos of himself masturbating. He also had requested that Doris send him photos of herself and videos of herself saying things to arouse him. He had requested photos of Doris naked and in a bathing suit, and he had asked several times for photos of her feet. Doris did not send nude photos, but she did send other photos he had requested because she feared his reaction if she did not. In his communications to Doris, defendant also had described sexual acts he sought with her.

Defendant had insisted on sending a gift to Doris's house. Although reluctant to provide defendant with her home address, Doris had done so because she was "really scared" of him and how he would react if she had refused. Defendant had mailed Pandora bracelets to her home, with a fake note stating the bracelets were a Pandora giveaway in the event Doris's mother saw the package. Before the bracelets arrived, defendant had sent Doris photos of the bracelets hanging around his penis.

5

On July 31, 2013, Doris reported defendant's communications to her mother, who contacted the police. During a detective's interview of Doris, she received a photo from defendant showing his penis. The detective took Doris's phone as part of the investigation. While the phone was in police custody, defendant had continued to send messages, ranging from asking "what happened," to threatening suicide, and requesting that Doris send the bracelets he had sent her to defendant's ill mother.

New Jersey detectives traveled to Mississippi and interviewed defendant at his home. After waiving his Miranda[2] rights, defendant provided a statement admitting to his communications with Doris and knowing she was underage. Following his arrest, defendant waived extradition and was held in New Jersey. He posted bail and was released on the condition that he not contact Doris. On Doris's sixteenth birthday, defendant violated that condition by contacting her on social media.

The jury acquitted defendant of second-degree attempted sexual assault but convicted him on the remaining charges: endangering the welfare of a child; sexual contact; stalking; and contempt for violating the no-contact order. The court sentenced defendant to an aggregate nine-year custodial term, parole

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1949-22

supervision for life, N.J.S.A. 2C:43-6.4, and compliance with the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23.

We affirmed defendant's conviction on appeal but remanded for resentencing because the victim's age was "double-counted" as an aggravating factor and an element of the relevant offenses. State v. Pumphrey, No. A-1279-15 (App. Div. May 4, 2017) (slip op. at 6-7). The trial court resentenced defendant to an aggregate eight-year custodial term.

Defendant filed a pro se PCR petition, and his counsel submitted a supplemental brief, asserting defendant received ineffective assistance of trial counsel, requesting an evidentiary hearing, and claiming defendant should not be listed on the sex offender registry. The PCR court heard oral argument and denied the petition without an evidentiary hearing.

The court determined defendant had failed to present evidence establishing a prima facie case of ineffective assistance of counsel and defendant was not entitled to removal from the sex offender registry. The court also determined it was without jurisdiction to remove defendant from the sex offender registry. The court entered an order denying the PCR petition. This appeal followed.

Defendant presents the following arguments for our consideration:[3]

POINT I

THE PCR COURT IMPROPERLY DENIED DEFENDANT'S CLAIMS THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING[.]

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS[,] AND PETITIONS FOR [PCR.]

B. TRIAL COUNSEL'S FAILURES TO PROPERLY INVESTIGATE DEFENDANT'S CASE, AND TO COMMUNICATE WITH DEFENDANT TO DEVELOP A TRIAL STRATEGY WERE ERRORS WHICH RAISED A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL[.]

C. TRIAL COUNSEL'S FAILURE TO MOVE TO SUPPRESS EVIDENCE SEIZED FROM DEFENDANT'S TELEPHONE AND DEVICES WAS AN ERROR WHICH RAISED A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL[.]

---

[3] Defendant does not reprise his claim that he should be removed from the sex offender registry or argue the PCR court erred by rejecting it. We therefore deem the argument abandoned and do not address it. See generally Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned).

II.

We review the PCR court's legal conclusions de novo. State v. Nash, 212 N.J. 518, 540-41 (2013). The de novo standard of review also applies to mixed questions of fact and law. State v. Harris, 181 N.J. 391, 420 (2004). We may "conduct a de novo review" of the court's "factual findings and legal conclusions" where, as here, the PCR court did not conduct an evidentiary hearing. Id. at 421; see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee defendants in a criminal proceeding the right to the assistance of counsel in their defense. Strickland, 466 U.S. at 686; Fritz, 105 N.J. at 50. The right to counsel requires "'the right to the effective assistance of counsel.'" Nash, 212 N.J. at 541 (quoting Strickland, 466 U.S. at 686).

To establish a prima facie case of ineffective assistance of counsel, a defendant must show a "reasonable likelihood" of success under the two-prong test outlined in Strickland, 466 U.S. at 694. State v. Preciose, 129 N.J. 451, 463 (1992); see also Fritz, 105 N.J. at 58. The Strickland standard requires that a defendant show (1) "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and (2) counsel's "deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). A defendant seeking PCR based on an ineffective-assistance-of-counsel claim "bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citations omitted). If a defendant fails to sustain his burden under either prong of the standard, a defendant's ineffective-assistance-of-counsel claim fails. Strickland, 466 U.S. at 687.

Under the first prong, a defendant must show "counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting State v. Castagna, 187 N.J. 293, 314 (2006)). Our analysis under the first prong is highly deferential to counsel. State v. Arthur, 184 N.J. 307, 318-19 (2005) (citing Strickland, 466 U.S. at 689). There is "'a strong presumption' that [counsel] provided reasonably effective assistance" and counsel's "decisions followed a sound strategic approach to the case[,]" State v. Pierre, 223 N.J. 560, 578-79 (2015) (quoting Strickland, 466 U.S. at 689), even when a strategic decision turns out to be a mistake, State v. Buonadonna, 122 N.J. 22, 42 (1991). A defendant may rebut the presumption of effectiveness by

A-1949-22

proving trial counsel's actions were not "sound trial strategy."  Arthur, 184 N.J. at 319 (quoting Strickland, 466 U.S. at 689).

Under the second Strickland prong, a defendant must "affirmatively prove" "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694).  Proof of prejudice under Strickland's second prong "is an exacting standard.'"  Ibid. (quoting Allegro, 193 N.J. at 367). A defendant "must 'affirmatively prove prejudice" in a PCR petition to satisfy the second prong of the Strickland standard.  Ibid. (quoting Strickland, 466 U.S. at 693).

Defendant argues the court erred by rejecting his claim trial counsel was ineffective by failing to properly investigate his case, provide defendant with the discovery materials, and adequately meet and communicate with defendant prior to trial for the purpose of developing a trial strategy.  Defendant also claims the court erred by rejecting his claim trial counsel was ineffective by failing to move to dismiss the second-degree attempted sexual assault charge.

11

We reject the latter claim because defendant cannot demonstrate that but for counsel's alleged error in failing to move to dismiss the attempted sexual assault charge, there is a reasonable probability the outcome of his trial would have been different. See Strickland, 466 U.S. at 693-94. The jury found defendant not guilty of that charge. As a result, the record establishes defendant did not suffer any prejudice due to counsel's purported error and defendant otherwise failed to present any evidence that he suffered prejudice under the second prong of the Strickland standard as a result of the alleged error. See Gideon, 244 N.J. at 551. We affirm the court's rejection of the claim for that reason alone. See Gaitan, 209 N.J. at 350 (citation omitted) ("Although a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient.").

We also reject defendant's claim the PCR court erred by denying his claim counsel was ineffective by failing to investigate his case, provide discovery materials, and confer with him prior to trial. A defendant claiming counsel was ineffective by failing to conduct an investigation "must assert the facts that an investigation would have revealed, supported by affidavits or certifications

based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant made no such showing here. He offers no competent evidence establishing what the investigation he claims counsel had failed to conduct would have revealed or demonstrating a reasonable probability that had the investigation been conducted, the result of his trial would have been different. And his bald and conclusory assertions concerning counsel's error do not establish a prima facie ineffective-assistance-of-counsel claim under the Strickland standard. Ibid.

Defendant's claims trial counsel was ineffective by failing to provide him with discovery materials and adequately conferring with him prior to trial suffer from similarly fatal infirmities. In support of his petition, defendant failed to present any evidence affirmatively establishing that but for trial counsel's alleged failure to provide him with the discovery materials and adequately conferring with him, there is a reasonable probability the result of his trial would have been different. Gideon, 244 N.J. at 551. Because defendant failed to sustain his burden under the second prong of the Strickland standard, 466 U.S. at 687; see also Nash, 212 N.J. at 542, we again affirm the court's denial of the claim for that reason alone. Gaitan, 209 N.J. at 350.

13

Defendant also argues the PCR court erred by rejecting his claim trial counsel was ineffective by failing to move to suppress evidence that defendant had asserted in his PCR petition was seized from defendant's electronic devices during a warrantless search conducted in Mississippi. In his brief on appeal, defendant abandons that claim, acknowledging that contrary to his assertion in the pro se PCR petition, the search that resulted in the seizure of the evidence had been conducted pursuant to a search warrant that had been issued in Mississippi. See generally Drinker Biddle & Reath LLP, 421 N.J. Super. at 496 n.5.

For the first time in his brief on appeal, defendant contends trial counsel was ineffective by failing to investigate whether the Mississippi search warrant had been properly issued. We reject the newly-minted contention because, again, defendant failed to present any competent evidence as to what "an investigation would have revealed," Cummings, 321 N.J. Super. at 170, such that counsel's alleged failure to conduct the investigation constituted deficient performance under Strickland's first prong. 466 U.S. at 690; Allegro, 193 N.J. at 366. Defendant also failed to present competent evidence satisfying his burden of proving prejudice under Strickland's second prong. 466 U.S. at 695; Gideon, 244 N.J. at 551. Those failures require the rejection of his claim counsel

was ineffective by failing to investigate if there were grounds supporting a challenge to the Mississippi search warrant.

The record also supports a finding defendant did not suffer prejudice under the <u>Strickland</u> standard based on counsel's alleged error in failing to investigate whether there were grounds to challenge the Mississippi search warrant. Even if defendant had demonstrated there had been grounds for the filing of a suppression motion, he could not establish prejudice under the <u>Strickland</u> standard because the other evidence—that is, the evidence beyond that found on defendant's phone—overwhelmingly proved defendant's guilt of the offenses for which he was convicted. <u>See</u> <u>Strickland</u>, 466 U.S. at 695 (explaining a court "must consider the totality of the evidence before the judge or jury" in determining whether a whether a PCR petitioner suffered prejudice as the result of a counsel's alleged deficient performance).

More particularly, defendant had given a knowing and voluntary statement to police during which he admitted to his communications with Doris and that he knew she was underage. Additionally, police had access to the offending electronic communications because they were obtained from Doris's phone. Thus, after considering all the evidence, we are persuaded defendant did not, and could not, establish there is reasonable probability that but for trial

counsel's alleged error in failing to investigate if there were grounds for filing a suppression motion for the evidence seized pursuant to the Mississippi search warrant, the result of the proceedings would have been different. Strickland, 466 U.S. at 687; see also Nash, 212 N.J. at 542.

Defendant also argues the PCR court erred by denying his claims without an evidentiary hearing. We disagree. Under our Rules,

> [a] defendant is entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.
>
> [R. 3:22-10(b).]

As we have explained, as to each of the asserted errors of his trial counsel, defendant failed to present competent evidence establishing a prima facie ineffective-assistance-of-counsel claim under the Strickland standard, and he points to no evidence establishing a dispute as to material facts or a need to consider matters outside the existing record. R. 3:22-10(b). Having recognized defendant failed to satisfy his burden of demonstrating a prima facie ineffective-assistance-of-counsel claim based on any of the alleged errors of his trial

16

counsel, the PCR court correctly denied the petition without an evidentiary hearing.  See Preciose, 129 N.J. at 462-63.

Any remaining arguments presented on defendant's behalf that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1949-22